[No. 11943.    Department Two.    December 11, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Eugene Burris, Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS — OFFICE — ABOLITION OF OFFICE — CIVIL SERVICE RULES—RIGHTS OF OFFICER. Where a contract system of disposing of garbage is done away with by the city's taking over the work, the office of garbage weighers under the old system, no longer needed, is thereby indirectly abolished, without the use of express terms therefor in the new ordinance; and the fact that holders of the office were under the civil service rules does not create a contract with them or give them a life tenure of office.

SAME—OFFICERS—CIVIL SERVICE RULES—DISCHARGE. Where the number of city garbage deckmen, under civil service rules, is reduced for reasons of economy, it is not a matter of injustice, requiring correction by the courts, for the superintendent, required by ordinance to lay off those whom he deems most inefficient, to retain, among those equally efficient, those longest in the service.

Appeal from a judgment of the superior court for King county, Smith, J., entered September 17, 1913, upon findings in favor of the defendant, dismissing a mandamus proceeding to secure reinstatement in office.    Affirmed.

*Thos. R. Horner, R. B. Brown,* and *James L. Crotty,* for appellant.

*James E. Bradford* and *William B. Allison,* for respondents.

FULLERTON, J.—This is a proceeding in mandamus instituted by the relator in the superior court of King county, to have himself reinstated as garbage weigher in the sanitation department of the city of Seattle.    From an adverse determination of his cause in the superior court, the relator appeals to this court.

[1]Reported in 144 Pac. 695.

Prior to the year 1911, garbage in the city of Seattle was required to be removed by the individuals accumulating it. In July of that year, the city itself undertook its removal, and to that end entered into contracts with certain individuals who agreed to remove and destroy it for certain fixed prices per ton. The superintendency of the work was put under the department of health, and to insure against overcharges, some five positions of garbage weigher were created by the city with a salary of $95 per month; the positions being classified under the civil service department of the city. This system continued in vogue until February 1, 1913, when, under proper ordinance provisions, the work was taken over by the city as a municipal matter, to be performed by persons employed by the city directly. While the position of garbage weigher seems not to have been formally abolished when the last change in the system was made, the weighing of the garbage was no longer necessary, and but the sum of $475 was included in the budget of expenses to cover the cost of that service during the ensuing year.

The appellant was appointed as one of the garbage weighers shortly after the positions were created, and continued to hold it and perform the duties imposed thereby until February 1, 1913, when he was transferred to the position of "deckman," a position connected with the disposal of garbage, which position he held until June 14, 1913, when he was separated from the civil service and from employment by the city, and placed upon the preferred register or waiting list. The superintendent of the department testified that the appellant was removed from the position of weighman because the weighing of garbage was unnecessary, and no sufficient appropriation had been made to meet the salary of the weighers; that he had not been continued as a deckman, because it was found that the services could be performed with a less number of men than were then being employed, and that economy required the lessening of the forces employed in the service of garbage removal.

Without noticing the appellant's contentions in detail, we think there can be no question as to the legality of the superintendent's action. An ordinance fixing a salary, and providing it shall be filled under civil service rules, does not create a contract between the municipality and the person selected to fill it, nor does it give to the occupant after he is selected a life tenure. The office may be abolished in the interests of economy, when the necessity therefor no longer exists and the occupant thereby removed has no legal cause of complaint because thereof. The appellant's case falls within the rule. The services which he was employed to perform were no longer required, and the city, like an individual under the same circumstances, had the lawful right to dispense with them.

It is true, the appellant contends that the position has not been abolished, that the labor of weighing garbage is still carried on by the city, and that he was discharged and others given his position; but we cannot so read the record. A position created by statute can be abolished indirectly as well as directly, and this position was indirectly abolished by the change in the system which rendered the services required thereby unnecessary, and by the failure to make an appropriation to pay for the services. Nor is the work of weighing garbage still being performed in the sense in which the appellant was employed to perform it. Such weighing as is now done is only occasional, and is done by the deckman for the purpose of keeping check on the amount of labor performed by the different employees in the several departments of the service. Nor do we think the appellant was discriminated against by the superintendent when he was selected for suspension from the service. His employment as deckman was subsequent to the employment of others in the same service, and while the civil service rules provide that the officer in laying off employees, must lay off those whom he deems least efficient, it is not a matter

of injustice, requiring correction by the courts, if, in making the selection among those equally efficient, he retain those longest in the particular service.

The judgment is affirmed.

CROW, C. J., MOUNT, PARKER, and MORRIS, JJ., concur.