1. MUNICIPAL CORPORATIONS—AMENDMENT OF CHARTER—CONSTITU-
   TIONALITY—SUPREME COURT—ELECTION.
   The Supreme Court may determine the constitutionality of an
       amendment to a home-rule city charter but its propriety is
       a question for the voters of such city.

2. SAME — CHARTER AMENDMENT — EFFECTIVE DATE — MUNICIPAL
   JUDGES.
   Charter amendment substituting office of associate municipal
       judge for that of a municipal judge theretofore appointed
       was designed to take immediate effect upon adoption, where
       it provides that such associate municipal judge should hold
       office until the next municipal spring election rather than
       deferring its effective date until such election (Dearborn
       Charter, § 10.2, as amended in 1951).

3. SAME—MUNICIPAL JUDGES—CREATION AND ABOLITION OF OFFICE.
   The office of municipal judge is not a constitutional one but is
       created by amendment of the home-rule city charter pur-
       suant to legislative authority provided by statute, can be
       legally abolished in the same manner and need not be
       abolished by constitutional amendment.

4. OFFICERS—ABOLITION OF OFFICE.
   Public offices may be abolished and no office holder has a con-
       tractual right thereto.

5. SAME—ABOLITION OF OFFICE—CONSTRUCTION OF CHARTER.
   It is unnecessary to use actual words of abolition or their equiv-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6]  37 Am Jur, Municipal Corporations § 103.
[2, 3, 11, 15]  30 Am Jur, Judges § 5.
[4, 5]  42 Am Jur, Public Officers §§ 11, 33.
[4, 5]  Power to abolish or discontinue office.  4 ALR 205; 172 ALR
        1366.
[7]  37 Am Jur, Municipal Corporations § 53.
[8]  30 Am Jur, Judges § 34.
[9]  30 Am Jur, Judges § 8.
[10]  14 Am Jur, Courts § 17.
[12]  37 Am Jur, Municipal Corporations § 231.
[16]  14 Am Jur, Costs § 91; 44 Am Jur, Quo Warranto § 122.

alent to eliminate or abolish a public office, when the only proper reading of the legislation, a charter amendment, as a whole, shows such purpose.

6. MUNICIPAL CORPORATIONS—CHARTER AMENDMENTS—ELECTIONS.

Voters on a lengthy charter amendment must be held to have been familiar with the terms thereof when they voted in strict accordance with the usual procedure for charter amendments of home-rule cities and abolished office of one municipal judge and substituted therefor an entirely different office pursuant to a different statute than that providing for other municipal judge whose office was continued without change except with some additional duties (CL 1948, §§ 117.28–117.33; § 730.101 *et seq.;* § 730.321 *et seq.;* Dearborn Charter, §§ 10.2, 10.10, 10.17, as amended in 1951).

7. CONSTITUTIONAL LAW—MUNICIPAL JUDGES—RECOMMENDATION TO COUNCIL—DELEGATION OF POWER.

Conferral by charter upon municipal judge of power to recommend to city council that associate municipal judge be engaged to sit an additional number of days to minimum prescribed by the charter did not constitute an illegal delegation of power since the right of recommendation is a normal part of the task of supervising the work of the court, the legislative authority involved being exercised solely by the city council (Dearborn Charter, § 10.10, as amended in 1951).

8. MUNICIPAL CORPORATIONS—CONSTRUCTION OF CHARTER—STATUTES —ASSOCIATE JUDGES.

Provision of home-rule city charter amendment, adopted pursuant to associate judges act, whereby the associate judge was to hold court "on direction of the municipal judge" was not contrary to the statute under which the amendment was adopted by permitting the full-time municipal judge to dictate to the part-time associate judge but merely a recognition of the administrative responsibility of the municipal judge in directing the details of the docket of the municipal court (CL 1948, § 730.321 *et seq.;* Dearborn Charter, § 10.10, as amended in 1951).

9. SAME—MUNICIPAL COURT—NUMBER OF JUDGES.

Neither the municipal court act nor the associate judges act requires that there be more than 1 municipal judge functioning full time, nor prevents an increase or decrease in the number of municipal judges in a municipality (CL 1948, § 730.101 *et seq.;* § 730.321 *et seq.*).

10. SAME—MUNICIPAL COURT—CHARTER AMENDMENT.

Changes in the structure of a municipal court for a home-rule city may be made by way of charter amendment, where the establishment of such a court is effected by way of charter amendment (CL 1948, § 730.101 *et seq.*).

11. SAME—JUDGES—ASSOCIATE JUDGES.

The number of full-time municipal judges may be reduced by charter amendment concurrently with the establishment of the new office of associate judge (CL 1948, § 730.101 *et seq.*; § 730.321 *et seq.*).

12. SAME—LEGISLATIVE BODY—APPOINTMENT OF OFFICERS.

Voters themselves may constitute the legislative body for purposes of appointment of city officials.

13. SAME—AMENDMENT OF CHARTER—APPOINTMENT OF OFFICERS.

The sovereign power of the people in a home-rule city to alter the charter implies power to provide for the effective functioning of the new government under the proposed alteration, by providing who should hold an office in event the charter amendment creating it is adopted (Dearborn Charter, § 10.2, as amended in 1951).

14. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ELECTION—CHARTER AMENDMENT—APPOINTMENT OF INCUMBENT TO INTERIM POSITION BY VOTERS.

The selection of an appointed, incumbent municipal judge by the voters of a home-rule city as an interim appointee to the office of associate judge at election at which charter was amended to abolish such office of 1 municipal judge and creating the office of associate judge was not an election within the meaning of the general election laws, hence, it is unnecessary to consider contention that passage of the charter amendment was in violation of State election laws when it attempted to name such incumbent to the interim position (Dearborn Charter, § 10.2, as amended in 1951).

15. QUO WARRANTO—MUNICIPAL JUDGE—ABOLISHED OFFICE.

Defendant in quo warranto proceedings, brought by the attorney general, who had been municipal judge in a home-rule city, occupying an office lawfully abolished by charter amendment, *held*, without right to office of municipal judge.

16. COSTS—QUO WARRANTO—PUBLIC QUESTION—MUNICIPAL JUDGE.

No costs are allowed in quo warranto proceedings to try right of defendant to office of municipal judge, a public question being involved.

Quo Warranto by Frank G. Millard, Attorney General, to test the right of Ralph B. Guy to the office of municipal judge of the City of Dearborn. Submitted June 6, 1952. (Docket No. 45, Calendar No. 45,413.) Judgment for plaintiff October 6, 1952.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General (*Glenn M. Coulter,* of counsel), for plaintiff.

*Dale H. Fillmore,* Corporation Counsel, *Duane Dunick,* Deputy Corporation Counsel, and *Frank C. McCann* and *Frederick G. Weideman,.* Assistants Corporation Counsel (*Robert E. Childs,* of counsel), for defendants.

BUTZEL, J. Frank G. Millard, attorney general of the State of Michigan, plaintiff, brings original quo warranto proceedings in this Court to determine the right of Ralph B. Guy, defendant, to the occupation of the office of municipal judge in the city of Dearborn, Wayne county. The following facts are conceded. The city of Dearborn has been organized under the home-rule act (PA 1909, No 279, as amended [CL 1948, § 117.1 *et seq.* (Stat Ann 1949 Rev § 5.2071 *et seq.*)]) since January 9, 1929. A new charter was adopted for the city in 1942. Chapter 10 thereof created the judicial department of the city of Dearborn and provided that there should be 2 justices of the peace having certain powers and administrative responsibilities in accordance with sections 28 through 33 of the home-rule act (CL 1948, §§ 117.28–117.33 [Stat Ann 1949 Rev §§ 5.2107–5.2113]).

In 1945 by charter amendment the judicial department was brought under the municipal court act (PA 1933, No 269 [CL 1948, § 730.101 *et seq.* (Stat Ann and Stat Ann 1951 Cum Supp § 27.3831 *et seq.*)]). In accordance therewith, there were created 2 mu-

nicipal judges in place of the previous justices of the peace and thereafter 2 judges have acted as municipal court judges of the municipal court of Dearborn.

An initiatory petition setting forth the newly proposed amendments to sections 10.2, 10.10 and 10.17 of chapter 10 of the charter, as amended in 1945, was circulated in July, 1951, and after securing the opinion of the attorney general of the State of Michigan that the amendments were proper they were placed on the ballot. The amendment was approved by the electorate. For purposes of clarity we set out such sections in full. As first amended at the 1945 election, they read as follows:

"Sec. 10.2. At the regular municipal election in the year 1945 and every 4 years thereafter, there shall be elected 2 municipal judges whose terms of office shall begin on the 4th day of July following their election, and who shall hold office for 4 years; provided, however, that the justices of the peace heretofore elected or appointed, and now holding office, shall be the municipal judges of said court and shall hold office for the remainder of the terms for which they were respectively elected or appointed.  *  *  *

"Sec. 10.10. Until otherwise changed by a charter amendment the municipal judges shall each receive a salary of $6,500 per annum, and shall be required to devote their entire time during office hours to the duties of their offices. The salaries herein provided for the municipal judges shall be in lieu of all fees, costs and charges to which said judges would be entitled but for the provisions of this section, except fees for the performance of marriage ceremonies, and for administering oaths in matters not connected with suits or proceedings in the municipal court in said city.  * .*  *

"Sec. 10.17. The words, 'justice of the peace,' and 'justices of the peace,' wherever the same may appear in other chapters of this charter shall be con-

strued to mean 'municipal judge,' or 'municipal judges,' as the case may be."

The amendments enacted in 1951 amended these sections so as to provide as follows:

"Sec. 10.2. At the regular municipal election in the year 1955 and every 6 years thereafter, there shall be elected 1 municipal judge and 1 associate municipal judge whose terms of office shall begin on the fourth day of July following their election, and who shall hold office for 6 years; provided, however, that the municipal judge heretofore elected and now holding office shall be the municipal judge and shall hold office for the remainder of the term for which he was elected; and provided moreover that the municipal judge heretofore appointed and now holding office shall be the associate municipal judge and shall hold office as such until an associate municipal judge is elected in the spring election held in the city of Dearborn in the year 1953. The associate municipal judge so elected in the said spring election in 1953 shall immediately assume office following his election, and shall hold office until the fourth of July, 1956.

"Sec. 10.10. Until otherwise changed by a charter amendment, the municipal judge shall receive a salary of $6,500 per annum, and shall be required to devote his entire time during office hours to the duties of his office. The associate municipal judge shall receive $1,000 per annum and such additional compensation as the council may by ordinance provide and shall be required to devote not less than 50 full days or 100 half days per year to the duties of his office. If the work of the court shall require, upon recommendation of the municipal judge, the council shall provide that the associate municipal judge shall sit any number of additional days, or half days, for which he shall receive such compensation as the council may by ordinance or resolution provide. The associate municipal judge shall hear all cases in which the municipal judge is disqualified and shall

hold court in the absence, disability or on direction of the municipal judge.

"The compensation provided for the municipal judge and the associate municipal judge shall be in lieu of all fees, costs, and charges to which said judges would otherwise be entitled, except fees for the performance of marriage ceremonies, and for administering oaths in matters not connected with suits or proceedings in said city.

"Sec. 10.17. Whenever in this chapter the term 'municipal judges' is used, it shall include both the municipal judge and the associate municipal judge. In all his official acts and in all court proceedings, the associate municipal judge shall be designated as 'municipal judge,' the word 'associate' being herein used to distinguish between the municipal judge required to devote full time and the one required to devote partial time to the duties of his office.

"Whenever the words 'justice of the peace' and 'justices of the peace' may appear in other chapters of this charter, they shall be construed to mean 'municipal judge' or 'municipal judges' as the case may be."

Messrs. George A. Belding and George T. Martin were elected for 6-year terms as municipal judges of Dearborn, such terms to begin July 4, 1950, and to expire July 4, 1956. On May 15, 1951, with 5 years left of his term, Judge Belding resigned. On May 18, 1951, defendant Ralph B. Guy was appointed by the city council to fill the vacancy. This appointment was made pursuant to the municipal court act, *supra,* section 2, being CL 1948, § 730.102 (Stat Ann 1951 Cum Supp § 27.3832), under which his appointment was to run until July 4, 1953, at which time the next regular spring election's successful candidate took office. The person who won that spring election would then serve until July 4, 1956, at which time the election of a judge and associate judge would be held in the usual manner. The reference in the amend-

ment to the "municipal judge heretofore elected and now holding office" is thus a reference to Judge Martin; and the reference to the "municipal judge heretofore appointed" is a reference to defendant. The effect of the amendment thus would be to constitute defendant the new associate judge, with the duties and salary as set forth in the amendment of 1951.

It is agreed that defendant, upon the advice of the corporation counsel of the city of Dearborn and although the amendment distinctly states it was an "economy" measure, has refused to surrender his position, title, prerogatives and duties as a municipal judge and has likewise failed to assume the office of associate judge in accordance with the provisions of the amended charter.

Counsel for defendant dispute the motives and the wisdom of the amendment in question. Suffice it for us to say that our determination must go only to its constitutionality; its propriety is a question for the voters of Dearborn.

Defendant contends that he is properly entitled to the office of municipal judge as the questioned' charter amendments are either invalid insofar as they purport to take effect before July 1, 1953, or fatally defective because of other alleged defects therein. He contends that the amendment, if construed to take effect immediately, has the effect of reducing the salary and term of a municipal judge contrary to the Michigan Constitution and the home-rule cities act; that the amendments represent an illegal delegation of power to the remaining municipal judge; that the associate judges act (PA 1947, No 109 [CL 1948, § 730.321 *et seq.* (Stat Ann 1951 Cum Supp § 27.4071 *et seq.*)]) under the authority of which the amendment was framed does not permit a reduction in the number of full-time municipal judges; that the selection by the voters of a specified individual for an interim position was improper as

the only means provided by statute was appointment; and that the method of selection of the associate judge was improper being contrary in several respects to the general election laws.

Defendant contends that the questioned amendment has the effect of changing the salary and term of a public officer contrary to the Constitution of Michigan and to the home-rule act, under which Dearborn is organized, if it be held to take effect immediately upon passage of the amendment and before the spring election at which his term would have expired.

Article 16, § 3, Constitution of 1908, reads as follows:

"Neither the legislature nor any municipal authority shall grant or authorize extra compensation to any public officer, agent, employee or contractor after the service has been rendered or the contract entered into. Salaries of public officers, except circuit judges, shall not be increased, nor shall the salary of any public officer be decreased, after election or appointment."

The home-rule act, section 5 (CL 1948, § 117.5 [Stat Ann 1949 Rev § 5.2084]), also provides:

"No city shall have power * * *
"(d) To change the salary or emoluments of any public official after his election or appointment or during his term of office; nor shall the term of any public official be shortened or extended beyond the period for which he was elected or appointed, unless he resign or be removed for cause, where such office is held for a fixed term."

We believe that an intent that the charter amendment is to take immediate effect may be gleaned from that portion of the amendment which provides:

"The municipal judge *heretofore* appointed and *now* holding office shall be the associate municipal judge and shall hold office as such until an associate

municipal judge is elected in the spring election held
in the city of Dearborn in the year 1953." (Italics
ours.)

If the amendment took immediate effect, therefore,
and did not abolish the office of municipal judge sub-
stituting therefor a new office, that of associate
judge, defendant claims the Constitution and statute
have been violated.

The office of municipal judge is not a constitutional
one. It was created by charter amendment pursuant
to provisions of the statutes of Michigan, under leg-
islative authority, and can be legally abolished in the
same manner. It need not be abolished by a consti-
tutional amendment. This seems not to be disputed
by defendant. Counsel also agree that public offices
may be abolished and that no office holder has a con-
tractual right thereto. *Sprister* v. *City of Sturgis,*
242 Mich 68. It is not necessary to use actual words
of abolition or their equivalent to eliminate or abol-
ish a public office when the only proper reading of
the amendment as a whole shows such purpose. The
prime issue thus is whether the office of municipal
judge held by defendant was abolished by such
amendment or whether it constituted merely a reduc-
tion in the salary, term, duties and authority of de-
fendant's office.

The offices of municipal judge and associate mu-
nicipal judge, even though it may be claimed carry
the same jurisdiction and title for purposes of court
procedure, are not the same. The associate judge
works only part time and is permitted to practice
law on the side; the municipal judge is required to
devote his full time to the office and may not practice
law. The associate judge is subject to the authority
of the municipal judge, who has full-time responsi-
bility for the conduct of the municipal court. The
office of associate municipal judge is established un-

der the associate judges act; the office of municipal judge under the municipal court act.  Defendant contends that the intent of the amendment is not clear and claims that the proposition submitted to the voters on the ballot was somewhat ambiguous.  However, all voters must be held to have been familiar with the terms of the somewhat lengthy charter amendments when they voted in strict accordance with the usual procedure for charter amendments. The amendments themselves make it clear and not ambiguous that an entirely different office was contemplated for defendant and that Judge Martin was to continue in his office without change, except with some additional authority.

We find that the amendment provided for a bona fide abolition of the office of one municipal judge to take effect immediately upon the passage thereof.

The amended section 10.10 provides partly as follows:

"If the work of the court shall require, upon the recommendation of the municipal judge, the council shall provide that the associate municipal judge shall sit any number of additional days, or half days, for which he shall receive such compensation as the council may by ordinance or resolution provide.  The associate municipal judge shall hear all cases in which the municipal judge is disqualified, and shall hold court in the absence, disability or on direction of the municipal judge."

Defendant contends that the foregoing provision concerning the recommendations of the municipal judge makes them a condition precedent to legislative action and is, therefore, invalid as it represents a delegation of power of the city budget to a person not the legislative body provided for under the home-rule act.  However, we do not find that there is any illegal delegation of power.  As a presiding judge,

the municipal judge would normally be given the right of recommendation as an additional means of supervising the work of the court. The council of the city of Dearborn is given the sole power to provide compensation for extra work and is thus vested with the legislative authority and has the power to act upon the recommendation as it sees fit.

Defendant also contends that the words "on direction" make it possible for the municipal judge to dictate to his colleague and as such are contrary to section 6 of the associate judges act (CL 1948, § 730.326 [Stat Ann 1951 Cum Supp § 27.4076]) which reads:

"The compensation of associate judges, the time and manner of payment of same, the funds from which same shall be paid and the time or times they shall be required to devote to the duties of the office, may be determined either by charter or ordinance."

The administrative responsibility of the municipal judge is such as to properly permit him to direct the details of the docket of the municipal court. The charter sets out the compensation and duties of the associate judge extensively but the exact handling and assignment of cases is an administrative responsibility which by its nature must be delegated. It would be a most unnatural relationship if the associate judge should take no instructions or directions from the full-time municipal judge who has the duty and responsibility of supervising the work of the court.

Defendant contends that the associate judges act does not permit a reduction in the number of full-time municipal judges, only an addition thereto. However, an examination of the statute reveals no requirement that there be more than one municipal judge functioning full time, for section 1 thereof (CL 1948, § 730.321 [Stat Ann 1951 Cum Supp § 27.4071]) provides:

"Any city having a justice or municipal court, or any court in which the justice or judge, or justices or judges, as the case may be  *  *  *  may by charter or by ordinance provide for the election of 1 or more associate justices or associate judges of such court."

Neither is there embodied in the associate judges act any prohibition against the abolishment of the office of one or more full-time municipal judges. It in no way limits the right of the city under the home-rule act, section 21 thereof, to amend its charter by initiatory petition of the electors and approved by a majority adoption thereof. In the municipal court act it is provided that a municipality may establish a municipal court by charter amendment, and it follows that changes in the structure of the municipal court are also made by charter amendment. Nothing in the municipal court act prevents an increase or decrease in the number of municipal judges in a municipality although its provisions may first be brought to bear only in a municipality with 2 justices.

We conclude, therefore, that neither the associate judges act nor the municipal court act can be construed to limit the right of the city to reduce the number of its full-time judges, whether or not this is done concurrently with the establishment of the new office of associate judge.

Defendant contends that the election of an individual (in this case, himself) to an interim position was improper as the municipal court act and associate justices act provide for the appointment of an individual to an interim position by the city council and by no other. The associate judges act provides:

"Sec. 5. In any city having 1 judge, or having more than 1 judge all of whom are elected at the same time, the associates shall be elected at the same time as the judge or judges." (CL 1948, § 730.325 [Stat Ann 1951 Cum Supp § 27.4075])

"Sec. 7. The legislative body of any city whose charter is amended to provide for the election of 1 or more associate judges as provided for in this act or which shall by ordinance provide therefor shall appoint an associate judge or judges to serve until such are elected." (CL 1948, § 730.327 [Stat Ann 1951 Cum Supp § 27.4077])

The municipal court act provides:

"Sec. 2. * * * Whenever a vacancy shall occur in the office of any judge of any such court by death, resignation, removal from office or from any other cause, such vacancy shall be filled by appointment by the legislative body of such city. Each judge so appointed shall assume office immediately following his appointment, and shall hold the same until his successor has been elected and has qualified. Successors to any judge or judges so appointed shall be nominated and elected at the next spring election held in such city following such appointment, and such successor or successors shall hold office until the expiration of the term to which such judge or judges removed from office by death, resignation, or otherwise, was elected." (CL 1948, § 730.102 [Stat Ann 1951 Cum Supp § 27.3832])

"Sec. 3. The qualifications, term of office, time and manner of election * * * shall be governed by the provisions of existing laws relating to justices of the peace in such cities." (CL 1948, § 730.103 [Stat Ann 1951 Cum Supp § 27.3833])

The term of Judge Martin, the remaining municipal judge, expires July 4, 1956. Applying the provisions of the municipal court act to the associate judges act it appears that it was contemplated that first, the associate judge be appointed; that at the next spring election an associate judge should be elected for the remainder of the term; and that in 1956 an associate judge should be elected to a full term contemporaneously with the new term of the

full-term municipal judge. Was this procedure followed by this charter amendment? Defendant argues that the "legislative body of such city" can only mean the city council, and that the choice by the electors was therefore invalid.

In certain instances the voters themselves may constitute the legislative body for purposes of appointment of city officials. In *People, ex rel. Brown, v. Parsons,* 200 Mich 39, we referred to the electorate of the city of Lansing as the "legislative body" in a construction of the charter thereof. In *Lewicki v. Matulewicz,* 321 Mich 388, appointment by the voters through the medium of a system of civil service was authorized instead of appointment under provisions nonapplicable to a home-rule city. In *Streat v. Vermilya,* 268 Mich 1, we considered an attempt to enjoin the election of city officers of Flint under a proposed charter at a special election. The intent was to create city officers under the proposed charter and at the same time to provide who should fill such city offices. We held (at page 7):

"In the absence of constitutional prohibition or legislative limitation it was the right and the duty of the electors of the city to provide for the election of officers under the proposed charter to take office in case of its adoption. Recourse is had to the electors of the city.

"'According to the theory of our government, the sovereign power is in the people.' *In re Spangler,* 11 Mich 298, 308. * * *

. "As a necessary incident to the broad powers expressly granted by the Constitution and the home-rule act for cities to the electors of a city, the electors of the city of Flint have the implied power to provide for the effective functioning of the new government under the proposed charter, if adopted, because the greater power necessarily includes the lesser."

We believe that it was within the powers of the voters to make the appointment directly instead of doing so through their representatives, the city council, in this particular instance. In creating the new office of associate municipal judge, the electorate of Dearborn, like that of Flint in the *Streat Case* had the right to exercise their sovereign power by providing for the person who should hold the office in the event the charter amendment should be adopted.

The selection of Judge Guy as an interim appointee to the office of associate judge by the voters of Dearborn was not an election within the meaning of the general election laws. Consequently, we need not consider defendant's contention that the passage of the charter amendment was in violation of State election laws when it attempted to name Judge Guy to the interim position.

We hold that defendant has no right to the office of municipal judge and that a judgment will be entered accordingly. No costs, a public question being involved.

DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.